## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* :

**FIRST EQUITY GROUP, INC.,**          :
         *Plaintiff*                   :
                                       :          **Case No. 3:08-CV-01893 (VLB)**
**v.**                                 :
                                       :
**MICHAEL CULVER**                     :
         *Defendant.*                  :          **February 11, 2009**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF DECISION GRANTING MOTIONS FOR A PREJUDGMENT REMEDY [DOCS. ## 2,3] AND DENYING MOTION TO DISMISS [DOC. # 21]

Before the court is the application for a prejudgment remedy filed on behalf of the plaintiff First Equity Group's ("FEG") by its vice president Aaron Hollander pursuant to Conn. Gen. Stat. § 52-278d, against the defendant Michael Culver. [Docs. ## 2,3] Also before the court is Culver's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). [Doc. # 21]

The Court has diversity jurisdiction as the plaintiff is a corporation both incorporated under the laws of and maintaining its principal place of business in the State of Connecticut, the defendant is a citizen of New York and the amount in controversy is $200,000 plus attorney's fees and interest, well above the $75,000 diversity threshold. 28 U.S.C. § 1332. The application seeks to secure a possible judgment against Culver for breach of contract to repay a loan advanced by FEG to Culver. The defendant argues that Hollander does not have standing to bring the suit on behalf of FEG and that the Court thus lacks jurisdiction. For the

reasons particularized below, the motion to dismiss is DENIED and the application for a prejudgment remedy is GRANTED in the amount of $260,512.

Facts

After consideration of the evidence introduced at a hearing on the application for prejudgment remedy, the Court finds the following facts: Hollander and Culver each own 50% of FEG. Culver is the president and Hollander is the vice-president of FEG. In addition to being the sole shareholders, the two men are the sole directors and officers of FEG.

On or about April 15, 2008, FEG entered into a loan agreement with Hollander and Culver under the terms of which each man could and did borrow up to $200,000 from FEG. The loan agreement provides that "in the event that prior to the Maturity Date the amount of cash maintained by the Corporation falls below $400,000 (the Cash Threshold Amount) and there are any amounts outstanding under either of the Notes, then the Shareholders may…require the immediate repayment under the Notes of an amount sufficient for the Corporation to achieve the Cash Threshold Amount."  The loan agreement also contains a provision which dictates the enforcement of the agreement. This provision provides that: "the Corporation may pursue remedies or otherwise enforce its rights hereunder against either Shareholder by action of the Shareholder against whom the Corporation is not trying to pursue remedies or otherwise enforce its rights.  A Shareholder electing to pursue remedies or otherwise may do so in his capacity as an officer of the Corporation in the name and on behalf of the

2

corporation."

On April 17, 2008, both Hollander and Culver signed the loan agreement and each of them borrowed $200,000 from FEG, as evidenced by promissory notes each signed. Each note contained a provision stating that the party against whom the action was brought to enforce the note would be liable for all costs and expenses incurred in pursuing a remedy, including reasonable attorney's fees.

On October 1, 2008, the amount of cash held by FEG had fallen to $142,565.00, well below the cash threshold amount set forth in the loan agreement, triggering the defendant's obligation to repay the loan. Pursuant to the terms of the loan agreement. Hollander wrote to Culver on that date, demanding that both men repay their loans in an amount sufficient to restore the corporation's funds to the cash threshold amount.  After unsuccessful attempts to reach an agreement for repayment, Hollander, acting on behalf of FEG and pursuant to the express terms of the loan agreement, brought action against Culver to compel repayment of the outstanding balance on the loan.  To date, the amount of cash held by FEG remains below the cash threshold amount. Hollander's note also remains unpaid, but he stands ready, willing and able to repay his loan if and when Culver pays his.

The Court first addresses the defendant's motion to dismiss which challenges the Court's jurisdiction to adjudicate this matter.

**Defendant's Motion to Dismiss**

On January 5, 2009, the defendant filed a motion to dismiss for lack of

3

subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Markarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw reasonable inferences in favor of the plaintiff." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) (citation and internal quotation marks omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." Makarova, 201 F.3d at 113.

Culver argues that this action is in the form of a shareholder's derivative suit governed by Conn. Gen. Stat. § 33-720 et seq. Under this theory, the defendant argues that Hollander has not met the written demand requirement of C.G.S. § 33-722 or the standing requirements of C.G.S. § 33-721.  As a consequence of these deficiencies, Culver asserts that this Court lacks subject matter jurisdiction.

The Connecticut Supreme Court defined a shareholder's derivative action as "an equitable action by the corporation as a real party in interest with a stockholder as a nominal plaintiff representing the corporation." Barrett v.

4

Southern Connecticut Gas Company, 172 Conn. 362, 370, 374 A.2d 1051,1054 (1977).  A shareholder's derivative suit "is designed to facilitate holding wrongdoing directors and majority shareholders (acting in their official fiduciary capacity as officers and or directors and not in their individual capacity) to account and also to enforce corporate claims against third persons." Id.  The derivative cause of action is "based upon the fact that the corporation will not or cannot sue for its own protection." Id. Conn. Gen. Stat. § 33-720 defines a derivative proceeding as a "civil suit in the right of a domestic corporation." Conn. Gen. Stat. § 52-572j(a) provides that: "[w]henever any corporation...fails to enforce a right which may properly be asserted by it, a derivative action may be brought by one or more shareholders...to enforce the right..." The law is inapposite to the defendant's theory.

The  facts do not support the defendant's assertion that the action brought by Hollander is a shareholder's derivative suit, subject to the requirements of Conn. Gen. Stat. § 33-720 et seq.  This is not an action in equity; it is an action at law for breach of contract.  Hollander did not bring suit in his capacity as a shareholder of FEG; Hollander brought suit in his capacity as an officer of FEG. The suit is not brought to force Culver to perform his fiduciary duty to FEG; it is brought to force Culver to repay a personal debt Culver owes to FEG.

The defendant's argues that Hollander has no power to sue as an officer of the corporation, and therefore could only bring suit as a shareholder. Hollander's power to sue on behalf of the corporation, however, is not bestowed by virtue of

his status as an officer of FEG, but as a party to the loan agreement.  Hollander
has the legal right to sue under the express and unambiguous terms of the loan
agreement authorizing him to do so.  The loan agreement of April 15 specifically
grants Hollander the power to take action to compel repayment of the loan "in his
capacity as an officer of the corporation." Both parties signed the Loan
Agreement as officers and directors of FEG as well as in their individual
capacities. As such, the directors, officers, and shareholders of FEG have
approved of allowing FEG to enforce its rights under the loan agreement by
granting Hollander the power to bring this suit in his capacity as an officer of
FEG.

        As such, this is not a situation where a shareholder is taking action when
"a corporation fails...to assert a right that my properly be asserted by it."
Conversely, this is a situation where the corporation is asserting its right to
enforce the loan agreement, and is doing so in a manner that was agreed upon by
the shareholders, officers, and directors of the corporation.

        The sole basis of the defendant's motion to dismiss rests upon the
assertion that the plaintiff has not met the requirements to bring a shareholder's
derivative suit under Conn. Gen. Stat. § 33-720 et seq. As the Court concludes
that this action is not a shareholder's derivative suit, the plaintiff need not meet
the requirements to bring such an action set forth in Conn. Gen. Stat. § 33-720 et
seq. The defendant's motion to dismiss is therefore denied.

        Moreover, even if this suit could be characterized as a shareholder's

6

derivative suit, the defendant's motion to dismiss mist still be denied because the plaintiff has met the requirements of Conn. Gen. Stat. § 33-720, contrary to the defendant's claims. The defendant first argues that the plaintiff has not met the demand requirement of Conn. Gen. Stat. § 33-722, which provides in relevant part: "(1) A written demand must be made upon the corporation to take suitable action; and (2) ninety days have expired from the date the demand was made *unless* the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period" (emphasis added).

The purpose of the demand requirement is to "allow the directors the chance to occupy their normal status as conductors of the corporation's affairs. Whether a corporation should bring a lawsuit is a business decision and the directors are, under the laws of every state, responsible for the conduct of the corporation's business." RMS Securities Fund, Inc. v. Stanton, 928 F.2d 1318,1326 (2d Cir. 1991).

Although Hollander has not admitted into evidence a formal written demand for payment and a threat of suit if payment was not made, Hollander testified that he and Culver exchanged a series of e-mails discussing the overdue loan repayment and the impending litigation.  Hollander testified that he had discussed with Culver, via e-mail, his intention to bring legal action against Culver if the outstanding loan balance was not paid.  Hollander testified that the two men had also discussed which law firm would be retained to bring the suit.

7

Culver's testimony regarding the content of the e-mails was equivocal. Culver was appreciably less able to recollect and convey events accurately and completely than was Hollander. Culver was unable to document his claims, notwithstanding admittedly equal access to the company's books and records as had Hollander.  The Court had also continued the hearing to afford Culver an opportunity to respond.  Culver was a recalcitrant and antagonistic witness, while Hollander was cooperative and forthcoming both on direct and cross examination. Based upon the testimony of both witnesses, the court finds Hollander to be the more creditable of the two and thus finds that Hollander gave Culver both written demand and notice prior to filing suit.  Accordingly, to the extent they apply, Hollander satisfied the requirements of Conn. Gen. Stat. § 33-722. Therefore, even if this action could properly be considered a shareholder's derivative suit, the facts of this case indicate that the demand requirements of Conn. Gen. Stat. § 33-722 have been satisfied.

Both parties have briefed the issue of whether demand would be futile in this case because of Hollander Culver's role as both a director of FEG and the party against whom the action was brought. The plaintiff argues that "the demand requirement is not applicable because any such demand would be futile." Despite the existence of contrary case law,[1] the defendant argues that the

---

[1] Several Connecticut Superior Court cases decided after the enactment of C.G.S. § 33-722 have continued to recognize the futility exception. See Guarino v. Livery Ltd., Inc., X04CV030127824 (Conn. Sup. Ct. Nov. 13, 2003)(Quinn, J.) (recognizing futility exception still applies in several situations); Miller v. Allaire, X05C054007126S (Conn. Sup. Ct. May 24, 2006)(Shay, J.) (recognizing necessity of making demand, or in the alternative, demonstrating the futility thereof); Musto v. Opticare Eye Health Ctrs., CV990359863S (Conn. Sup. Ct., June 15, 1999)

8

"'futility' concept was overridden by C.G.S. § 33-722, effective in 1997."  The basis of this argument is that "[s]ection 33-722 is based verbatim on § 7.42 of the Model Business Corporations Act, [and] the MBCA Official Comment to § 7.42 states as follows: 'Section 7.42 requires written demand on the corporation *in all cases*...'"  The court need not rule on the continued viability of the futility exception or its applicability to the present action, as the court has found that adequate demand has been made in the present action based on the aforementioned reasons.

Under the theory that this action is a shareholder's derivative suit, the defendant also argues that Hollander does not have standing under Conn. Gen. Stat. § 33-721, which provides in relevant part:  "A shareholder may not commence or maintain a derivative proceeding unless the shareholder: (1) was a shareholder of the corporation at the time of the act or omission complained of… and (2) fairly and adequately represents the interest of the corporation in enforcing the right of the corporation."

It is undisputed that Hollander was a shareholder of FEG at the time of the act or omission complained of.  Therefore, the defendant argues that Hollander does not fairly and adequately represent the interests of the corporation.

The facts of the case simply do not support this argument.  Hollander, acting as a representative of FEG, is exercising the corporation's right to collect

---

(Melville, J.) (right of a stockholder to bring a derivative action does not come into being unless he has made demand or demonstrated that demand would be futile).

on a debt, albeit not against Culver in his corporate, but rather his personal capacity.  The purpose of collecting that debt is to return the cash funds of the corporation to a threshold amount that was determined and agreed upon by the officers, shareholders and directors of the corporation.  It is illogical to say that a shareholder is acting against the best interest of the corporation when he is taking actions expressly authorized by, and pursuant to the terms of, an agreement approved of by all directors and officers of a corporation.

Based on the above reasons, the defendant's motion to dismiss is denied. The nature of the present action cannot properly be characterized as a shareholder's derivative suit.  As such, the Hollander need not meet the statutory requirements of Conn. Gen. Stat. § 33-720 for bringing such an action. Furthermore, even if Hollander was required to meet the requirements of Conn. Gen. Stat.§ 33-720, the record demonstrates that he has in fact done so.

Having dismissed the defendant's assertions that the Court lacks jurisdiction, the Court turns to the substance of the matter, namely FEG's application to for a prejudgment remedy to secure a possible judgement against Culver.

## Plaintiff's Application for Prejudgment Remedy

The plaintiff seeks an order permitting it to attach Culver's assets in an amount sufficient to satisfy a possible favorable judgment for breach of the loan agreement. The Connecticut Appellate Court articulated the legal standard for reviewing an application for prejudgment remedy in <u>Marlin Broadcasting v. Law</u>

**Office of Kent Avery**, 101 Conn. App. 638, 646-647, 922 A.2d 1131 (Conn. App. 2007). "[P]rejudgment remedy proceedings are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of the adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have the property of the defendant held in the custody of the law pending adjudication of the merits of the action." Id. at 646, quoting Cahaly v. Benistar Property Exchange Trust Co., 73 Conn. App. 267, 273, 812 A.2d 1 (Conn. App. 2002), rev'd on other grounds, 268 Conn. 264, 842 A.2d 1113 (Conn. 2004).

"The purpose of a prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, should he obtain one . . . It is primarily designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff may recover . . . The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto…" Id. at 646-47.

"§ 52-278d(a) provides in relevant part that a hearing on a prejudgment remedy shall be limited to a determination of…whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoff, will be rendered in the matter in favor of the plaintiff … If the court, upon consideration of the facts before it and

**11**

taking into account any [defenses] … finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court." (Internal citations and quotations omitted.) Id. at 647, 842 A.2d 1113; see also Benton v. Simpson, 78 Conn.App. 746, 750-51, 829 A.2d 68 (Conn. App. 2003).  The statute has not been amended since the date of that decision.

The probable cause standard is settled and well defined. "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false . . ." Id. at 647.

The Court's decision must be based on its appraisal of the legal issues and the credibility of the witnesses and other evidence. See Nash v. Weed and Duryea Co., 236 Conn. 746, 749, 674 A.2d 849 (Conn. 1996). The court has "broad discretion to deny or grant a prejudgment remedy…" State v. Ham, 253 Conn. 566, 658, 755 A.2d 176 (Conn. 2000).

In light of this legal standard and upon the consideration of the evidence presented in this case and the facts thereby found by the Court, the Court finds that sufficient probable cause exists to grant the plaintiff's request for the

12

prejudgment remedy of attachment.  The truth of the following facts is not disputed by either party: 1) Culver borrowed $200,000 from FEG which he has not repaid despite the occurrence of an event irrefutably triggering the obligation to repay the loan. The Court further finds that FEG had demanded payment and Culver has unjustifiably refused to repay the loan. Culver's refusal to repay the loan forced FEG to retain legal counsel and incur legal expenses to file this action to enforce its right to repayment. Culver is  liable for FEG's collection costs, including its attorney's fees.  Accordingly, FEG has established sufficient probable cause that a judgment would be rendered in its favor in an action for breach of the loan agreement.  The Court now turns to the amount of the prejudgment remedy to award.

Culver owed FEG $153,294.50, exclusive of interest. Interest  originally accrued at a rate of 5% compounded annually and increased beginning on the 31st  day after maturity or non-payment, which occurred on October 31, 2008, to 11% per annum.  Given that the average life of a lawsuit of this type in this Court is three years, the Court concludes that there is probable cause that the defendant would be liable for interest in the amount of $56,587 on the judgment date.[2]  The plaintiff's costs and attorney's fees for the first month pf litigation total

---

[2]Compound interest was calculated according to the following formula:  A= P(1+ r/n)^nt, where A= amount, P=principal, r =rate, n=number of times compound per year and t=time period. The amount still outstanding on the loan is $153,294.50.  According to the terms of the loan agreement the 5% rate applied for the 30 day period after non-payment.  At a rate of 5% interest compounded annually, the interest due on the loan is $7664.72 per year, or $21 per day. Therefore, for the 30 day period after non-payment, when the rate was 5% the defendant owes $630 in interest. After that time the rate increased to 11% compounded annually as per the terms

$9,680.65.  The court therefore makes a conservative estimate that there is probable cause that the plaintiff will incur attorney's fees of $50,000 as of the date of judgment, On the basis of these findings, the Court finds that there is probable cause that a judgment n the amount of $260,512 or greater will enter in favor of the plaintiff FEG.

### The Defendant's Request for a Set-off

Culver claims that he is owed $8,574.61 in unpaid salary pursuant to an oral agreement he had with Hollander.  According to Culver, they agreed that they would be paid the same annual salary. The evidence shows that Hollander was paid more than Culver beginning in 2002. Culver testified that he never challenged the disparity despite having received disclosure of the disparity four to five times each year.

Before awarding a prejudgment remedy, the Court must consider Culver's set-off claim. Conn. Gen. Stat. § 52-278d(a). In addition, the set-off claim is proper for this Court's consideration because Conn. Gen. Stat. § 52-139 provides that: "(a) [i]n any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other."  The

---

of the loan agreement.  $153,294.50 plus $630 equals $153,924.50  Applying the 11% interest rate to that amount over the estimated possible litigation period of 3 years yields an interest rate of $56,587.42, for a total of $210,512 (rounded to the nearest dollar) in principal and interest owed after a three-year period.

14

Connecticut Appellate Court has recognized that "[a] set-off is made where the defendant has a debt against the plaintiff arising out of a transaction independent of the contract on which the plaintiff sues, and desires to avail himself of that debt, in the existing suit, either to reduce the plaintiff's recovery, or to defeat it altogether, and, as the case may be, to recover a judgment in his own favor for a balance" (Internal quotation marks omitted.) <u>Bank of Boston Connecticut v. Avon Meadow Associates</u>, 40 Conn.App. 536, 541, 671 A.2d 1310 (Conn. App. 1996).

Culver asserts and the evidence he introduced shows that prior to 2002, he and Hollander had received equal salaries.  However, Culver admitted that better evidence of the two men's compensation is their W-2 forms, which were offered by the plaintiff. These records were admittedly equally available to both Culver and Hollander.  The Court heard testimony and received conflicting evidence purporting to establish the amount of compensation received. However, an examination of the parties' W-2 forms for the years 2002 through 2007 supports Culver's claim that he was paid $8,574.61 less than Hollander from 2002 through 2008. This fact is of little consequence, however, since Culver has failed to demonstrate that an agreement existed which would entitle him to receive equal pay over that time period. Culver was unable to provide the court with any written documentation of an agreement with FEG or Hollander indicating that he and Hollander would receive equal compensation.  Although the Culver introduced into evidence a spreadsheets indicated that the two men had received equal pay at points prior to 2002, this is not evidence of an such an agreement, particularly

since Culver admitted being informed four to five times each year for the past five years of how much money he and Hollander were paid and that he never raised an objection.

In sum, the court finds that Culver's testimony regarding the equal pay agreement is dubious and finds that no such agreement existed. Culver's request for a set-off is therefore denied

For the aforementioned reasons, the defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is denied.  There is probable cause that a judgment in the amount of $261,512, inclusive of interest and attorney's fees, will enter for FEG, Culver's claim of a right of set-off is denied, and a prejudgment remedy of attachment is granted in the amount of $260,512 in favor of FEG.  Culver is hereby ordered to disclose to FEG forthwith any and all rights, title and interest he now has or may in the future have in and to any and all things of value whatsoever. Such disclosure shall be made in writing under oath and penalty of perjury.


IT IS SO ORDERED.

_____
/s/
Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut:  February 11, 2009.


16